GABRIEL F. PENWELL v. THOMAS L. WILKINSON.

*Pleading—Breach of contract.*

Where suit is brought for the breach of a contract, which has been substantially modified by the subsequent agreements of the parties, such agreements should be set out in the declaration, to entitle the plaintiff to recover special damages for such breach.[1]

Error to Berrien. (O'Hara, J.) Argued June 16, 1893. Decided October 2, 1893.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Lawrence C. Fyfe* and *Marshall Howell,* for appellant.

*Potter & Potter,* for plaintiff.

MONTGOMERY, J. On the 26th day of November, 1888, plaintiff and defendant entered into a contract, by the terms of which defendant agreed to sell to plaintiff 160 acres of land, at the price of $6,600, payable, $2,600, on or before one year, with interest at 8 per cent., and the balance, $4,000, by assuming the payment of a mortgage for that amount which defendant gave covering the property. The agreement contained the further provision that plaintiff should erect a saw-mill on the land, and cut and work up the standing timber, and that defendant should receive all pay for the manufactured product, the moneys received to be applied on the $2,600 of the purchase price. At different dates, supplemental agreements were entered into, as follows: January 7, 1889, the following agreement was made:

---

[1] See *Angell v. Loomis, ante,* 5.

"It is especially covenanted and agreed that, until said sum of $2,600 is fully paid, the agreement herein that said Gabriel F. Penwell may work up the timber on said land, as fully set forth in the contract, shall apply only to the basswood, whitewood, and elm timber, and shall not include the beech, maple, and ash timber standing on said land, which is reserved by said Wilkinson, and is to be left standing; and any attempt by said Penwell to cut or work up the beech, maple, or ash timber, without written consent of said Wilkinson indorsed hereon, shall work a forfeiture of this contract, and constitute a default in its terms."

On the 29th of August, 1889, another supplemental agreement was made, which, after reciting that Wilkinson had sold and agreed to deliver to Studebaker's, at South Bend, Ind., 100,000 feet, more or less, of basswood boards, contained the further agreement, as follows:

"Now, said Gabriel F. Penwell agrees to commence immediately to cut the logs, saw and manufacture said lumber, and to have all the basswood, said timber on said land described in the annexed contract, made into lumber according to said agreement, and to have the same delivered to said Studebaker's before November 26, 1889, and, in case he shall fail to do so, his contract is forfeited; and he agrees to have said work well under headway before September 15, 1889, and, in case he fails to do so, his contract is forfeited; and said Wilkinson may take immediate possession of said property and the saw-mill, and all its appurtenances thereon, and do as he sees fit therewith, and said Penwell agrees to forfeit and give up the possession of all such property."

This memorandum also contained the further provision that plaintiff should protect defendant from any lien of workmen.

On the 25th day of November, 1889, a further supplemental agreement was made, which reads as follows:

"It is agreed by Thomas L. Wilkinson that this contract and agreement and supplements thereto may stand and remain in abeyance till January 1, 1890, subject to all the other conditions and penalties thereof; the condition of this extension being that said Wilkinson and his agents

may take immediate charge of getting out and manufacturing the lumber on said property, but said Penwell to pay all the wages, costs, and expenses of getting out, selling, and delivering said lumber, and money heretofore or hereafter advanced by said Wilkinson for that purpose shall be charged as a part of the expenses incurred under the terms of this contract, and payable as therein specified. And if said Penwell fails to pay up all the expenses and money agreed to be paid in this contract by January 1, 1890, same is forfeited, and said Wilkinson may have and take immediate possession, as specified herein. And Gabriel F. Penwell expressly agrees to all the terms of this extension."

The plaintiff gave testimony tending to show that he entered upon the performance of the contract, and entered into possession of the lands by a tenant; that, subsequently, the defendant, by his agents, under the authority of the supplemental agreement, took charge of manufacturing the lumber; and that the defendant received as proceeds of such lumber $5,615.91. It was admitted that he paid out for expenses $2,116.14. The plaintiff's testimony also tended to show that while this sum was not all realized on the 1st day of January, 1890, yet the defendant did not treat time as important, and continued the operations later. The defendant's testimony tended to show that, in addition to the sum of $2,116.14, he expended $123.10, expenses for foreman; his own expenses, $140.90; for insurance, $49.50; taxes, $95.30; that he paid a mortgage to one Stattler of $477.38, which was an incumbrance on plaintiff's personal property, and which defendant claimed to have paid at plaintiff's request; that he was entitled to charge interest on the $2,600, amounting to $416; and that he was also entitled to compute interest on the $4,000 mortgage, amounting to $280. Defendant's testimony therefore tended to show that he had received at the time he declared the contract forfeited, in January, 1891, but $1,917.59 of the principal sum due him.

from plaintiff; that he was entitled to charge the accrued interest, $280, or thereabouts, against this, leaving but $1,637.59 realized on the contract of the principal sum. There was testimony tending to show that the value of the land, denuded of the timber, was from $4,000 to $4,500. Defendant, however, traded it away at a valuation of $5,000. If this be added to the net sum realized according to his theory, he actually received $6,637.59, of which sum he was entitled to $6,600. Plaintiff recovered a judgment for $554.53.

We have thus gone into detail for the reason that it has been suggested that, if error was committed on the trial, no damage was done to defendant by reason of it, as it is claimed that the equities showed plaintiff entitled to recover a larger sum than the jury actually awarded. If the defendant in fact realized out of the transaction a larger sum than the amount to which he was entitled under the contract, there may perhaps be no difficulty in holding the plaintiff entitled to recover such excess as money equitably due him from the defendant. This would result from treating the plaintiff as the equitable owner of the property, and holding that the same was in the hands of the defendant as an equitable mortgagee, and requiring him to account for whatever he realized therefrom. But, unfortunately for plaintiff's contention, the testimony fails to show beyond controversy that defendant realized any such sum in excess of what he was entitled to charge against the plaintiff as to justify the verdict rendered. It becomes necessary, therefore, to inquire whether there was error in the submission of the case to the jury.

It was contended at the outset, and all through the case, that the plaintiff could not recover under the declaration, except by showing a performance of the original contract. This contention was overruled by the court, and the instruc-

97 MICH.—8.

tions proceeded upon the view that, if the plaintiff had established that a sufficient sum had come into the hands of defendant under the supplemental agreements to cover the amount of the $2,600 and interest, before the 5th day of January, 1891, the plaintiff would be entitled to recover damages for a breach of contract, and, as a part of such damages, the difference between the value of the land and the purchase price thereof. This was error. The subsequent agreements worked a substantial modification of the contract, and should have been set out in a special count of the declaration, to entitle plaintiff to recover special damages for the breach of contract. This was not done, and, as the point was made and covered by request to charge, the error calls for a reversal.

The court also fell into an error in charging against the defendant as having received, prior to January 5, 1891, the full $5,615.91, as the evidence shows beyond dispute that a portion of this sum was not received until after the commencement of this suit.

For these reasons the judgment will be reversed, with costs, and a new trial ordered.

The other Justices concurred.